UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANNETTE SHANDS,

                              Plaintiff,

         v.                                                  No. 15-CV-4260 (KMK)

LAKELAND CENTRAL SCHOOL                                      OPINION & ORDER
DISTRICT and DR. TAMMY COSGROVE,
*Assistant Superintendent of Human
Resources*,

                              Defendants.

Appearances:

Annette Shands
Cortlandt Manor, NY
*Pro se Plaintiff*

James A. Randazzo, Esq.
Portale Randazzo LLP
White Plains, NY
*Counsel for Defendants*

Drew W. Sumner, Esq.
Morris Duffy Alonso & Faley
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

    Pro se Plaintiff Annette Shands ("Plaintiff") brought this Action against the Lakeland

Central School District (the "District"), and Assistant Superintendent of Human Resources

Tammy Cosgrove ("Cosgrove") (collectively, "Defendants"), alleging that Defendants failed to

offer her an Assistant Principal position because of her age, race, and gender, in violation of the

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, the New York State

Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, and the Fourteenth Amendment Equal

Protection Clause.  (Third Am. Compl. (Dkt. No. 54).)  Before the Court is Defendants' Motion

for Summary Judgment.  (Not. of Mot. (Dkt. No. 83).)  For the following reasons, the Motion is

granted.

## I.  Background

### A.  Factual Background

The following facts are taken from Defendants' statement pursuant to Local Civil Rule

56.1 (Defs.' Rule 56.1 Statement ("Defs.' 56.1") (Dkt. No. 86)), Plaintiff's response to that

statement, (Pl.'s Resp. to Summ. J. Mot. ("Pl.'s 56.1") (Dkt. No. 90)), Plaintiff's declaration,

which duplicates the disputed facts identified in Plaintiff's 56.1 statement, (Decl. of Opp'n to

Summ. J. Mot. ("Pl.'s Decl.") (Dkt. No. 91)), and the admissible evidence submitted by the

Parties, and are recounted in the light most favorable to Plaintiff, the non-movant.[1]  The facts as

described below are not in dispute, except to the extent indicated.

---

[1] Local Civil Rule 56.1(a) requires the moving party to submit a "short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  The nonmoving party, in turn, must submit "a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short[,] and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried."  Local Civ. R. 56.1(b).  "A pro se litigant is not excused from this rule," *Brandever v. Port Imperial Ferry Corp.,* No. 13-CV-2813, 2014 WL 1053774, at *3 (S.D.N.Y. Mar. 13, 2014) (italics omitted), and "[i]f the opposing party . . . fails to controvert a fact set forth in the movant's Rule 56.1 statement, that fact will be deemed admitted pursuant to the local rule,"  *Baity v. Kralik,* 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also T.Y. v. N.Y.C. Dep't of Educ.,* 584 F.3d 412, 418 (2d Cir. 2009) (same). Here, Defendants filed and served their 56.1 statement, (Defs.' 56.1), in addition to a statement notifying Plaintiff of the potential consequences of not responding to the Motion, as required by Local Rule 56.2, (Dkt. No. 87), and Plaintiff filed a response, (Pl.'s 56.1)

However, Plaintiff's response for the most part does not comply with Rule 56.1.  Of the 265 separately numbered paragraphs in Defendants' 56.1 statement, (Defs.' 56.1), Plaintiff conceded that 80 of them are "undisputed," (Pl.'s 56.1).  Of the remaining 185 paragraphs, in addition to identifying actual disputes of fact, Plaintiff (1) abstained from answering four of

Plaintiff is an African-American woman over the age of sixty-five. (Defs.' 56.1 ¶¶ 1–2;

Pl.'s Decl. ¶ 1.) Defendant Cosgrove is the Assistant Superintendent for Human Resources in

---

them, (Pl.'s 56.1 ¶¶ 247–49, 252), (2) "disputed" many of them with only semantic objections, (*id.* ¶¶ 1–4, 11, 33, 35, 65, 67–68, 73, 86–87, 92, 100, 104, 126, 135, 145, 171–77, 205–213, 220–28, 236–44, 258), and (3) "disputed" many of them by asserting irrelevant facts that do not contradict Defendants' factual assertions, (*id.* ¶¶ 5–6, 9–10, 13, 16, 24, 26, 37, 49, 53–55, 62, 64, 70–72, 75–76, 84, 93, 97–98, 105–107, 109, 112, 114, 120, 125, 131–133, 137–139, 142–143, 148, 153, 157, 162–163, 166, 168, 170, 185–186, 188–190, 192, 196–201, 203–204, 216–218, 231, 233–234, 251, 264–65). These purported disputes, which do not actually challenge the factual substance described in the relevant paragraphs in Defendants' 56.1 statement, are not actual disputes and thus the Court will not consider them as creating disputes of fact. *See Baity*, 51 F. Supp. 3d at 418 ("Many of Plaintiff's purported denials—and a number of his admissions—improperly interject arguments and/or immaterial facts in response to facts asserted by Defendants, often speaking past Defendants' asserted facts without specifically controverting those same facts."); *id.* ("[A] number of Plaintiffs' purported denials quibble with Defendants' phraseology, but do not address the factual substance asserted by Defendants."); *Pape v. Bd. of Educ. of Wappingers Cent. Sch. Dist.*, No. 07-CV-8828, 2013 WL 3929630, at *1 n.2 (S.D.N.Y. July 30, 2013) (explaining that the plaintiff's 56.1 statement violated the rule because it "improperly interjects arguments and/or immaterial facts in response to facts asserted by Defendant, without specifically controverting those facts," and "[i]n other instances, . . . neither admits nor denies a particular fact, but instead responds with equivocal statements"); *Goldstick v. The Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002) (noting that the plaintiff's 56.1 statement "does not comply with the rule" because "it adds argumentative and often lengthy narrative in almost every case[,] the object of which is to 'spin' the impact of the admissions [the] plaintiff has been compelled to make"). Additionally, some of Plaintiff's statements are inconsistent. (*Compare* Pl.'s 56.1 ¶¶ 2, 185 (claiming that race is not relevant to this lawsuit) *with* ¶¶ 139, 171, 179 (alleging race discrimination).)

Moreover, in some of the instances where Plaintiff *does* identify actual disputes of fact, she fails to cite the supporting portions of the record; this also could permit the Court to deem the challenged facts undisputed. *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) (explaining that the court is not required to search the record for genuine issues of material fact that the party opposing summary judgment failed to bring to the court's attention); *Baity*, 51 F. Supp. 3d at 418 (collecting cases holding that "responses that do not point to any evidence in the record that may create a genuine issue of material fact do not function as denials, and will be deemed admissions of the stated fact." (alteration and internal quotation marks omitted)). However, in light of Plaintiff's pro se status, the Court will consider the actual disputes identified in Plaintiff's 56.1 statement, provided they are actually supported by evidence in the record. *See, e.g.*, *Cherry v. Byram Hills Cent. Sch. Dist.*, No. 11-CV-3872, 2013 WL 2922483, at *1 (S.D.N.Y. June 14, 2013) ("[W]here a pro se plaintiff fails to submit a proper . . . Rule 56.1 statement in opposition to a summary judgment motion, the [c]ourt retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." (italics and internal quotation marks omitted)).

the District.  (Defs.' 56.1 ¶ 3.)  Her duties include, among other things, overseeing recruitment

and hiring and processing grievances.  (*Id.* ¶ 5.)  Cosgrove had never met or spoken to Plaintiff

until after Plaintiff filed this Action.  (*Id.* ¶¶ 7–8, 18.)

### 1.  Plaintiff's Interactions with the District

At some point in 2004, Plaintiff presented to the District's Board of Education to search

for employment as an administrator.  (*Id.* ¶ 254.)  A receptionist directed Plaintiff to the Human

Resources office.  (*Id.* ¶ 255.)  While there, Plaintiff saw a job posting for a position of

Elementary School Principal on a bulletin board.  (*Id.* ¶ 257.)  Plaintiff spoke with District

employees concerning the posting and indicated that she was interested in the position.  (*Id.*

¶¶ 259–60.)  An employee responded that the District received too many applicants for the

position and that the position would, or should have, been taken down.  (*Id.* ¶ 261.)  Plaintiff did

not respond to the employee's statement.  (*Id.* ¶ 262; *see also* Decl. of James A. Randazzo, Esq.

("Randazzo Decl.") (Dkt. No. 85) Ex. A ("Pl.'s Dep.") 182.)  Plaintiff was also told that she

would not be hired because she was not in the database as certified for the position.  (Defs.' 56.1

¶ 263.)  Plaintiff asked that a search be conducted for both her maiden name, "Annette Oliver,"

and her married name, "Annette Shands."  (Pl.'s 56.1 ¶ 260.)  As the search was being

conducted, Plaintiff said, "You just passed my name," but the unidentified female employee

nervously said, "oh no.  That's not it."  (*Id.* ¶¶ 39, 179, 260.)  Plaintiff said "I am quite sure it

was," and offered to bring in her certification from home, but the employee said, "Oh, [n]o!  We

can't let you do that.  It's got to be on our list."  (*Id.* ¶ 260; *see also* Pl.'s Dep. 183–84 (same);

Pl.'s 56.1 ¶¶ 10, 260 (noting "patterned responses" of "We only hire from our list.  You are not

on our list.  We cannot hire you.").)  Plaintiff does not remember if she submitted her resume or

an application for the Elementary School Principal Position, nor does she remember discussing the job posting with anyone else from the District afterwards. (Defs.' 56.1 ¶¶ 264–65.)

In May 2014, Plaintiff applied for an Assistant Principal position at Lakeland Copper Beech Middle School ("Copper Beech"), where grades six through eight are taught. (*Id.* ¶¶ 14, 19–20.) Plaintiff first learned of the opportunity to apply for the position when she visited the District's Board of Education on May 16, 2014 for the purpose of seeking employment. (*Id.* ¶ 21.) Plaintiff met with Jayana Davis, who is African American, (*id.* ¶¶ 24, 26), works in Human Resources, is supervised by Cosgrove, and is responsible for posting job openings in the District, (*id.* ¶¶ 9–11), for "possibly 20 minutes," (*id.* ¶ 32). Davis had never met with, spoken with, or heard of Plaintiff before. (*Id.* ¶¶ 27–29.) Plaintiff told Davis that she was looking for employment. (*Id.* ¶ 31.) Davis showed Plaintiff a bulletin board, and together they looked at job postings. (*Id.* ¶ 33.) Plaintiff verbally expressed interest in an administrative position—specifically, the Copper Beech Assistant Principal position. (*Id.* ¶¶ 34–35.) Davis told Plaintiff that the District may be taking that post down that same day. (*Id.* ¶ 36.) Plaintiff said she intended to give Davis an application that day, and gave her a copy of Plaintiff's resume. (*Id.* ¶¶ 37, 43; Pl.'s 56.1 ¶ 37.) Plaintiff did not give Davis any other documents. (Defs.' 56.1 ¶ 44.)

Davis searched "the New York State Ed Public Inquiry database" for Plaintiff's teacher administrator certifications. (*Id.* ¶ 38.)[2] Davis searched for "Annette Shands," which did not return any results. (*Id.* ¶ 39.) Plaintiff also requested a search be made for her maiden name, "Annette Oliver," and Davis affirmed that both of Plaintiff's names had been searched. (Pl.'s

---

[2] Plaintiff says she "was under the impression that someone other than Davis was doing the searching and that Davis was the one reporting to [Plaintiff] whatever the other person communicated to her." (Pl.'s 56.1 ¶ 38.) This is again not a real dispute, as it does not actually contradict the fact that Davis did the search, (Randazzo Decl. Ex. D ("Davis Dep.") 42–43), and in any event is not material to deciding the instant Motion.

56.1 ¶¶ 38–39; *see also* Davis Dep. 45–46.) Plaintiff attributes this failure to lack of training of the District's on-site employees, because Plaintiff is certified, and the District is able to find Plaintiff's credentials when she informs them of her availability to substitute teach. (Pl.'s 56.1 ¶¶ 38–39; *see also* Letter from Plaintiff to Court (March 27, 2018) ("Compliance Letter") (Dkt. No. 88) Ex. A ("Certification"); *id.* Ex. F ("Defs.' EEOC Opp'n") 2 ¶ 4 (admitting that Plaintiff is certified).) Plaintiff offered to bring in a copy of her certification from home, but was again told, "Oh, no! We have to have it on our list." (Pl.'s 56.1 ¶ 39; *see also id.* ¶ 40 (same).) Davis explained that Plaintiff would not be considered for the Assistant Principal position if Plaintiff was not certified. (Defs.' 56.1 ¶ 40.) Davis testified that she advised Plaintiff to contact the New York State Department of Education because she was unable to locate Plaintiff's certifications, and provided her with their contact information, (*id.* ¶ 41–42), but Plaintiff avers that Davis never mentioned the Department of Education, let alone provided contact information, (Pl.'s 56.1 ¶¶ 41–42).[3] Plaintiff left with a copy of the job posting. (Defs.' 56.1 ¶ 45.)

### 2. The Copper Beech Assistant Principal Job and Plaintiff's Qualifications

Plaintiff read the Assistant Principal job posting and the qualifications the District was seeking in prospective candidates. (Defs.' 56.1 ¶ 47.) The posting stated that "New York State certification" in school administration was "required," and listed the following "qualifications":

- A dynamic, high energy leadership style with a successful background in middle school education

---

[3] Plaintiff also alleges that Davis told her she "was mistaken about [her] permanent certification and . . . was probably provisionally certified." (Pl.'s 56.1 ¶ 40.) However, in her deposition, Plaintiff testified twice that she did "not remember exactly" what Plaintiff said to Davis and what Davis said back to her. (Pl.'s Dep. 59–60.) The Court therefore declines to consider this new fact, which contradicts Plaintiff's prior deposition testimony. *See Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) ("[F]actual allegations that might otherwise defeat a motion for summary judgment will not be permitted to do so when they are made for the first time in the plaintiff's affidavit opposing summary judgment and that affidavit contradicts her own prior deposition testimony.").

• A thorough understanding of the Common Core Learning Standards
• Comprehensive knowledge of middle school curriculum and instructional methodology including differentiation
• Ability to communicate effectively with excellent writing and public speaking skills
• Habits of administration capable of encouraging professional cooperation and enthusiasm to meet current demands for excellence in public education

(Randazzo Decl. Ex. F ("Job Posting"); *see also* Defs.' 56.1 ¶ 17 (describing the duties of the Assistant Principal).)

Plaintiff believed that as of May 2014, she had a successful background in middle school education, as listed in the first requirement. (Pl.'s Dep. 84.) She testified that this background consisted of (1) working with Copper Beech students in 2003 in conjunction with the John C. Hart Library; (2) teaching middle school students in 1969 through 1970 at Mount Vernon High School; and (3) substitute teaching at Copper Beech. (Defs.' 56.1 ¶ 53.)[4] The first category consisted of leading a voluntary after-school program celebrating African American History during February of 2001, (*id.* ¶ 54), which was extended to include making presentations at Copper Beech and an elementary school in the District, (Pl.'s 56.1 ¶ 54). Plaintiff testified that this experience lasted between several weeks and a month and that Copper Beech students were enrolled in the program, but she could not remember if the program met once per week or more. (Defs.' 56.1 ¶¶ 55–56.) The John C. Hart Library is a public library for the Yorktown community. (*Id.* ¶ 57.) Plaintiff did not list this after-school program on her resume, (*id.* ¶ 58),

_____

[4] Plaintiff contends that she also has other experience that qualifies as background in middle school education: (1) her experience working as an Administrator for middle school students who were congregants in Bethel Church in Harlem for over twenty years, (2) working as an Administrative Intern at the Greenburgh Graham School in Hastings, New York, (3) working in programs at Lehman College and Mercy College; (4) writing a grant for Bethel's middle school students to be involved in a summer enrichment program; (5) being involved in Community Theater with 7-17 year olds; (6) advising Hackley middle school students of various test strategies; and (7) developing and implementing a summer program for middle school students in Newark, New Jersey's Community Action Program (CAP). (Pl.'s 56.1 ¶¶ 53–55.)

but she listed it on her purported cover letter dated May 16, 2014, (Pl.'s 56.1 ¶ 58; Compliance

Letter Ex. G ("Email Application") at 6 ("Cover Letter")).[5]

Plaintiff's resume does state that she worked as a teacher at Mount Vernon High School

in 1969–70.  (Defs.' 56.1 ¶ 67.)  Plaintiff contends that she was teaching Traphagen Middle

School students who were being housed in the High School, (Pl.'s 56.1 ¶ 67), and that her cover

letter spoke to work with middle school students "elsewhere," (*id.* ¶ 69), but her resume did not

state that she worked in the Mount Vernon Middle School, (Defs.' 56.1 ¶ 69), or that she worked

with middle school students, (Randazzo Decl. Ex. E ("Resume")).  As to the third category

Plaintiff listed—substitute teaching—she testified that she could not recall which specific years

she worked for the District, but it was sometime in the 1980s, 1990s, and 2000s, and that she was

a substitute teacher at Copper Beech in the 2000s for 17 or 20 days.  (Defs.' 56.1 ¶¶ 59–61.)

Plaintiff could not remember which classes she taught in the 1990s and 2000s other than English.

(*Id.* ¶¶ 62, 64.)  She also could not recall how many days she worked as a substitute teacher in

the 1980s, but knows it was for more than one day.  (*Id.* ¶ 63.)  Plaintiff's last employment by a

school district was as a substitute teacher with the District in 2001 and 2002.  (*Id.* ¶ 65.)  Plaintiff

did not include any of her work substitute teaching for the District on her resume, (*id.* ¶ 66), but

it was mentioned in her cover letter, (Pl.'s 56.1 ¶ 66).

---

[5] The cover letter states, in relevant part: "I have worked successfully with middle school students elsewhere and also at Copper Beech.  Several years ago I supervised a number of Copper Beech students who volunteered to participate in an African American History Month Celebration which was being sponsored by the John C. Hart Memorial Library.  Then, too, having substituted at Copper beech, I might also add that staff members told me that I should come back regularly because the students liked me.  They went on to say that they overheard a number of students speaking favorably of me.  According to staff members, the gist of what the students said was that they considered me '*strict but fair*.'"  (Cover Letter.)

Plaintiff also believed that as of May 2014, she had a thorough understanding of the Common Core Learning Standards, as listed in the second job requirement. (Defs.' 56.1 ¶ 49.) Plaintiff had experience teaching Common Core Learning Standards (the "Standards") in summer programs at Lehman College in the 1990s and substitute teaching in the District in the 2000s. (*Id.* ¶ 50.) Plaintiff contends that she was also exposed to the Standards in classes at Ball State University and Columbia University, in her early teaching, in the Search for Education, Elevation and Knowledge (SEEK) core program at Lehman College, and in the Science Technology Entry Program (STEP) at Mercy College. (Pl.'s 56.1 ¶¶ 49–50.) Plaintiff did not mention the Common Core Learning Standards on the resume she submitted to the District with her application for the Assistant Principal position. (Defs.' 56.1 ¶ 51.) Plaintiff contends that her cover letter does mention her knowledge of the Standards, and her resume lists Lehman College and Mercy College, which used the Standards. (Pl.'s 56.1 ¶ 51; Cover Letter; Resume.)[6]

According to Plaintiff's resume, her most recent position in the public education system was for seven months in 1993 as an administrative intern at the Greenburgh-Graham School District. (Defs.' 56.1 ¶ 70; *but see* Pl.'s 56.1 ¶ 70 ("My most recent work with public school students has been in the role of an Associate Pastor in Harlem.").) Plaintiff testified that she "could have been considered a Principal" and that faculty and staff referred to her as "Assistant Principal" during her internship. (Defs.' 56.1 ¶¶ 71–72.) However, Plaintiff did not hold an Assistant Principal or Principal title at any job, and indeed listed her position with Greenburgh-Graham on her resume as an administrative intern. (*Id.* ¶¶ 73–74.) Plaintiff does not dispute

---

[6] The cover letter references the Standards by stating: "Having had many opportunities to develop curricula for various groups, help individuals achieve desired standards, review, revise and evaluate programs, I have no problem understanding *Common Core Learning Standards* or *differentiation.*" (Cover Letter.)

this, but contends that she has "performed the duties of an assistant principal" in a variety of the other positions discussed earlier. (Pl.'s 56.1 ¶ 72.) According to Plaintiff's resume, prior to her internship, her most recent employment in the public education system was as an English teacher at Mount Vernon High School from 1969–70, and her most recent full-time employment with any school district was that same year. (Defs.' 56.1 ¶¶ 75–76.)[7] Her only other employment in the public education system was as an early childhood and English as a second language teacher at Public School 48 in the Bronx from 1966 to 1969. (*Id.* ¶ 77.)

Plaintiff's most recent employment included working as a consultant with Peekskill Area Healthcare, where she worked for 18 months administering diversity and sensitivity training sessions, and left in August 2013. (*Id.* ¶¶ 78–80.) During that time, Plaintiff also worked as an Associate Pastor at Bethel Church in Harlem, New York, from 1995 to 2015. (*Id.* ¶¶ 81–82.) Plaintiff testified that her duties included "community meetings," "working with young people" under the age of 16, leading grant programs, and going on trips; she generally characterized her duties as "education," because "education is what changes your behavior." (*Id.* ¶¶ 83–84; *see also* Pl.'s 56.1 ¶ 84 (noting that congregants were ages "newly-born to 103 years of age").) Plaintiff's resume and cover letter do not state that she was at all involved in educating or teaching students while a pastor. (Defs.' 56.1 ¶ 85; Cover Letter.) Plaintiff's resume and cover letter also did not include some other positions, including (1) the SEEK program at Lehman

---

[7] Plaintiff states that these facts are "not true" because the grant and guidelines for the STEP program at Mercy College, where she worked as an administrator from 1978–82, (*see* Resume), states that enrolled students were also students from public school districts, (Pl.'s 56.1 ¶¶ 75–76). No such grant is in the record. In any event, this fact does not create an actual dispute, because working in a program with students who are also enrolled at public schools does not mean Plaintiff was employed in the public education *system*. Moreover, Plaintiff's resume does not mention STEP, let alone describe it as involving public school students; rather, she lists that she worked in the "College Opportunity Program" at a college. (Resume.)

College in 1993; (2) Mount Olivet Baptist Church; (3) the CAP in New Jersey in the 1970s; and (4) the Mount Vernon Board of Education in the 1960s. (Defs.' 56.1 ¶ 88; Cover Letter.)

As for the certification requirement, (*see* Job Posting), Plaintiff holds New York State Education Department certificates in English and as a School District Administrator, (Defs.' 56.1 ¶ 89; Certification). These certificates were obtained in 1969 and 1995, respectively. (*Id.* ¶¶ 90–91.) Plaintiff completed her administrative internship as a requirement for obtaining her Administrator certification. (*Id.* ¶ 92.) Plaintiff never held a position as a School District Administrator after obtaining this certification in 1995. (*Id.* ¶ 93.)

### 3. Plaintiff's Application for the Copper Beech Assistant Principal Position

The Assistant Principal job posting listed a May 23, 2014 application deadline and noted that an on-line application through www.olasjobs.org ("OLAS") was required. (Job Posting.) OLAS is an Online Application System for educator jobs, and is hosted by the Board of Cooperative Educational Services, which includes a Putnam/Northern Westchester branch. (Defs.' 56.1 ¶¶ 94–96.) On May 20, 2014, Plaintiff accessed OLAS and applied to the District for the Assistant Principal position. (*Id.* ¶ 99.) Plaintiff input the responsive information in OLAS. (*Id.* ¶ 100.) Under the "current employment information" section, Plaintiff filled in "Date Available" as July 1, 2009. (Randazzo Decl. Ex. I ("May 20 Application") 3.)[8]

---

[8] Defendants contend that this was Plaintiff's available start date for the Assistant Principal job, even though she was applying in 2014. (Defs.' 56.1 ¶ 101.) Plaintiff claims that she registered her availability to coincide with the job posting's "effective date" of July 1, 2014, (Pl.'s 56.1 ¶ 101), and that she does not recall typing in this 2009 date, and thus it was a mistake, probably a page from a prior application she completed in 2008, (Pl.'s Dep. 119–20). In fact, Plaintiff's OLAS account contained a letter dated November 19, 2008, addressed to Westchester County School Administrators, applying for the position of substitute teacher in the District. (Defs.' 56.1 ¶¶ 116–19; Randazzo Decl. Ex. M.) To the extent Plaintiff now contends that she never drafted this letter or filed it on OLAS, (Pl.'s 56.1 ¶¶ 46, 116–19), this new allegation contradicts her prior deposition testimony, (Pl.'s Dep. 158–61), and thus will not be considered.

Plaintiff's application stated that she was never appointed tenure in a public school district in New York. (Defs.' 56.1 ¶ 102.) She also indicated that she was currently employed by the District as a substitute teacher. (May 20 Application 3.) In fact, Plaintiff had not worked as a substitute for the District since 2002, (Defs.' 56.1 ¶ 103; Compliance Letter Ex. B), but she maintains that she never removed her name from the available substitutes list, (Pl.'s 56.1 ¶ 103). Plaintiff's application also stated that she had approximately two years of experience working with grades four through eight, which includes the grades Plaintiff considers to be "middle school." (Defs.' 56.1 ¶¶ 104–05.) This was accurate, not including summer programs. (*Id.* ¶ 106.)[9] Plaintiff did not put any information in the "Other Experience in Education" section of the application. (*Id.* ¶ 107.) Plaintiff also submitted references with her application, one of whom was listed as deceased. (May 20 Application 4.)

Plaintiff received a notification from OLAS that her application was successfully submitted at 7:09 pm on May 20, 2014. (Defs.' 56.1 ¶ 110; Randazzo Decl. Ex. J.) After receiving this confirmation, Plaintiff e-mailed Cosgrove on May 20, 2014 at 8:37 pm, attaching a copy of her resume and a cover letter dated May 16, 2014. (Defs.' 56.1 ¶¶ 111–13; Email Application.)[10] Plaintiff claims she also submitted this cover letter with her OLAS application, but does not remember ever seeing it on her OLAS account or taking it down. (Defs.' 56.1 ¶ 114; *see also* Pl.'s 56.1 ¶¶ 100, 114.)

---

[9] To the extent that Plaintiff now avers otherwise, her statements contradict her prior deposition testimony, (Pl.'s Dep. 123), and in any event, are irrelevant to the question of what she told Defendants, which is documented in both versions of the OLAS application, the earlier of which is of undisputed authenticity, (May 20 Application 3).

[10] The copy of the resume Plaintiff emailed is slightly different than the resume she submitted on OLAS. (*Compare* Email Application *with* Resume.) Most of the differences are stylistic, including font and capitalization, but the emailed resume also lists "educational affiliations." (Email Application.)

OLAS has a record of an application bearing Plaintiff's name and information dated May 28, 2014. (Randazzo Decl. Ex. P. ("May 28 Application").) Plaintiff testified that she does not remember submitting an application on this date, (Pl.'s Dep. 138), and now contends that any such application was sent by someone else or fabricated, (Pl.'s 56.1 ¶¶ 121–24).[11] The May 28 application is largely identical to the May 20 application, except that it lists Plaintiff's available start date as July 1, 2014 and contains a field concerning "Administrative Experience." (*Compare* May 20 Application *with* May 28 Application; Defs.' 56.1 ¶ 130.) However, the "Administrative Experience" field indicates that Plaintiff has "[n]o" such experience at the elementary, middle school, high school, or district levels. (Defs.' 56.1 ¶ 125.) Plaintiff did not list her experience administering summer programs, library programs, the Newark CAP program, or tutoring students in her own home on her resume, cover letter, or either OLAS application. (Defs.' 56.1 ¶¶ 127–28; Cover Letter.)

### 4. The District's Search for and hiring of a Copper Beech Assistant Principal

The District has a non-discrimination policy, which District employees are trained in annually, that prohibits discrimination on the basis of race, color, gender, and age, in, among other things, recruiting and appointing employees. (Defs.' 56.1 ¶¶ 131–33.) The review board tasked with evaluating applications for an Assistant Principal position in the District consists of Cosgrove, Assistant Superintendent for Curriculum and Instruction Jean Miccio ("Miccio"), and the Principal of the school seeking to fill the position. (*Id.* ¶ 135.) The review board reviews all submitted resumes and determines which applicants to call for screening interviews based on their qualifications and experiences; after conducting screening interviews, the board then

---

[11] When an applicant modifies an OLAS application already submitted, this updates the application date, even if it was timely submitted. (Defs.' 56.1 ¶ 248.) Thus, it is possible that Plaintiff's application date was changed when someone updated her existing application.

determines what pool of candidates will proceed for further interviews by a committee composed of representatives from all of the collective bargaining units. (*Id.* ¶¶ 136–139.) A candidate needs only a single vote from a single review board member to advance to the screening interview stage. (*Id.* ¶ 167.) Members of the committee then rate the applicants, and the review board determines which applicants will proceed to the final round of interviews. (*Id.* ¶¶ 142–43.) If the remaining applicants' references are good, the finalists are interviewed by the District's superintendent, who decides which of the finalists to recommend to the School Board to appoint to the position. (*Id.* ¶¶ 145–46.) The School Board then interviews the recommended applicant and choses to appoint or not to appoint that applicant to the position. (*Id.* ¶ 147.)

Over 300 candidates applied for the Copper Beech Assistant Principal position, including Plaintiff. (*Id.* ¶ 148.) The review board consisted of Cosgrove, Miccio, and Robert Bergmann ("Bergmann"). (*Id.* ¶ 150.) Plaintiff's name appears on the list of applicants considered by the review board. (*Id.* ¶ 149.) The review board maintains that it screened each candidate's application and resume. (*Id.* ¶ 151.) However, Plaintiff contends that her resume, cover letter, and OLAS application were not reviewed until after the District was notified of her EEOC complaint, filed on October 8, 2014, because (1) she was told she was not certified and would not be considered or hired, (2) she received an unsigned letter of denial from Human Resources denying that she was certified and confirming her application was not considered; and (3) she found "untrue statements and fabricated evidence" in the District's response to her EEOC complaint. (Pl.'s 56.1 ¶ 136, 148–49, 151, 167, 169, 187; Randazzo Decl. Ex. T ("EEOC

Charge"); Compliance Letter Ex. D ("July 2, 2014 Letter").)[12]  Yet, Plaintiff also does "not

dispute what actions [Defendants] say [they] took."  (Pl.'s 56.1 ¶ 167.)

Cosgrove testified that when she evaluates candidates for a position, "the number one

thing that [she] look[s] for is the certification," and "[t]he number two thing [she] look[s] for is

the qualifications that [they've] put in the posting."  (Defs.' 56.1 ¶ 152.)  She elaborated:

"Qualifications, having experience at the middle school level, that's the meat and potatoes" of a

candidate's application.  (*Id.* ¶ 153.)  Cosgrove claims she reviewed Plaintiff's May 28, 2014

OLAS application and resume and considered her candidacy for the Assistant Principal Position.

---

[12] The July 2, 2014 letter is from "The Human Resources Department" in the District.
(July 2, 2014 Letter.)  The letter states, in relevant part:

> Thank you for your interest in a position with Lakeland Central School District.
> Please be advised that our district requires teaching certification for all of our
> teaching positions.  In order to be considered for a teaching position with our
> district, **current valid NYS certification and on-line application through . . .
> (OLAS) are required**.
>
> We post all of our vacancies for teachers . . . on OLAS.  We encourage you to visit
> the online system to submit your application and resume, and to review job vacancy
> listings.  To apply for a position online, please visit http://www.olasjobs.org/lhv/
> and ensure that all information fields are completed, attach a copy of your resume
> as a Word file, and then apply for the specific position(s) you are seeking.  Please
> be advised that the OLAS system is the only application method utilized by this
> district for certified positions.  ***In the interest of fairness, we are unable to process
> paper applications.***
>
> If there is a vacancy posted, once the posting has closed, applicants whose
> qualifications most closely meet district needs will be contacted by the appropriate
> department or building for an interview appointment. . . .
>
> Again, we sincerely thank you for your interest in the Lakeland Central School
> District.

(*Id.* (emphasis in original).)  The letter does not reference the Assistant Principal position or any
specific application Plaintiff has filed, and indeed references only teaching positions, not
administrative ones.  (*See id.*)

(*Id.* ¶ 154.) Cosgrove noted that the application did not have "the experience [they] were looking for," namely, "middle school experience." (*Id.* ¶¶ 155–56.) Cosgrove also testified that she sought candidates with "a successful background in middle school education," as listed on the job posting, but there was nothing on Plaintiff's resume or OLAS application suggesting she had such a background. (*Id.* ¶¶ 157–59.)[13] Plaintiff disputes these rationales, because her cover letter mentions having worked successfully with Copper Beech students, and her resume notes administrative duties as Associate Pastor and at her internship, as well as her year spent teaching at Mount Vernon High School, her tenure at Lehman College, and administering STEP at Mercy College. (Pl.'s 56.1 ¶¶ 155–56, 158; Resume; Cover Letter.) Cosgrove also testified that she sought candidates with "a thorough understanding of the Common Core Learning Standards," as listed in the job posting, but there was nothing on Plaintiff's resume showing Plaintiff possessed that understanding. (Defs.' 56.1 ¶¶ 160–61.) Specifically, Cosgrove noted that Plaintiff had "no work experience in a school district during the time the Common Core Learning Standards were being implemented," in 2012, and Plaintiff "didn't list any training [on her resume] that she sought to bring herself up to speed with" the Standards. (*Id.* ¶¶ 162–64.) Plaintiff again references her cover letter and asserts that while her experience with the Standards may predate recent implementation, "that is not to say that [her] knowledge of Common Core Learning Standards is defunct." (Pl.'s 56.1 ¶ 162.)[14]

---

[13] The Court does not understand the basis for Plaintiff's contention that this "is arbitrary and without educational merit" and "discriminatory" by ignoring the distinction between teachers and administrators, and in any event, it is a legal conclusion that cannot create a dispute of fact. (Pl.'s 56.1 ¶ 157.)

[14] Plaintiff alleges that she is "up to speed" on the Common Core Learning Standards because the City University of New York instituted core standards earlier than the public schools of New York. (Pl.'s 56.1 ¶ 163.) But, Plaintiff does not explain how this relates to her experience or how, if at all, these standards are the same as the ones used in public schools, nor

Of the more than 300 applicants for the Assistant Principal position, the review board selected approximately 20 of them to advance to the screening interview stage. (Defs.' 56.1 ¶ 165.) Eight of those chosen candidates were women. (*Id.* ¶ 168.) However, Plaintiff was not interviewed for the Assistant Principal Position. (*Id.* ¶ 178.) Cosgrove and Bergmann did not recommend Plaintiff advance to the screening interview stage, and both contend that Plaintiff's gender, race, and age were not a factor in their decisions. (*Id.* ¶¶ 169, 171–77.)[15] Cosgrove specifically decided not to recommend Plaintiff because of her lack of experience as a school administrator and lack of experience working at the middle school level. (*Id.* ¶ 170.) Cosgrove did not know who Plaintiff was when she reviewed Plaintiff's EEOC Charge of Discrimination sometime after October 6, 2014, nor did she know Plaintiff's race or age prior to that date. (*Id.* ¶¶ 180–82; *see also id.* ¶¶ 184–85 (stating the same for Bergmann).) Plaintiff counters that this indicates Cosgrove and Bergmann never read Plaintiff's email or her application, which lists employment dates prior to 1970 and work with an African Methodist Episcopal Church. (Pl.'s 56.1 ¶¶ 180–82, 184.) Further, Plaintiff alleges that she was not hired for the Assistant Principal position because of her age, race and/or gender, (Defs.' 56.1 ¶ 179), and maintains that she encountered discrimination when seeking employment as an Administrator in the District, which did not recognize her certification, but not when she announced her availability to substitute teach, (Pl's 56.1 ¶ 179.)

---

does she cite any evidence in support of this claim. In any event, again, this is not in her application materials. (*See* May 20 Application; Resume; Cover Letter.)

[15] Because a candidate needs only one vote to receive a screening interview, and Plaintiff did not receive one, Miccio also must have not recommended Plaintiff for an interview. (Defs.' 56.1 ¶¶ 166–67, 178.) However, no Party discusses Miccio's vote in their 56.1 statements.

The District hired Francesco "Frank" Ruolo as Assistant Principal of Copper Beech. (Defs.' 56.1 ¶ 186.)[16] Upon review of his resume and application, Cosgrove concluded that Ruolo had a successful background in middle school education, based on his work experience as an Assistant Principal at a Yonkers middle school for four years and the fact that he had received tenure in that position. (*Id.* ¶¶ 187–89.) Cosgrove also concluded that Ruolo had a thorough understanding of the Common Core Learning Standards, because his resume stated that he conducted meetings to address students' strengths and weaknesses, coordinated the administration of the New York State English language arts and mathematics assessments, and trained teachers on using the assessments to drive classroom instruction, which were all "affected by changes in the Common Core." (*Id.* ¶¶ 190–92.)[17] However, Cosgrove did not consider Ruolo's previous experience working with disabled children aged 3 to 16 as the Assistant Director of the Special Needs and Academic Center enrichment program at the Jewish Community Center of Mid-Westchester, because it did not "appear to be connected to public school at all." (*Id.* ¶¶ 249–51.)

The Review Board conducted Ruolo's screening interview on June 10, 2014, and voted unanimously to advance Ruolo to the next round of the hiring process—the interview committee stage. (*Id.* ¶¶ 193, 245) Cosgrove took notes during the interview, noting Ruolo's experience as a middle school teacher and assistant principal, which was his current position. (*Id.* ¶¶ 194–98.)

---

[16] Ruolo was appointed tenure as Assistant Principal on August 14, 2017, and remains in that position at Copper Beech today. (*Id.* ¶¶ 252–53.) Plaintiff provides no factual basis for her contention that this "is not true." (Pl.'s 56.1 ¶ 253.)

[17] Plaintiff claims to dispute this fact by asserting that "[i]t is appropriate for the Review Board to have written documentation that sets forth the basis for the selection of successful candidates and the rejection of others." (Pl.'s 56.1 ¶ 190.) The Court will not consider this conjecture, unsupported by any evidence and irrelevant to the fact asserted in Defendants' 56.1 statement, here or in any of the numerous times Plaintiff repeats it. (*See id.* ¶¶ 192, 199–201, 203–04, 216–18, 231, 233–34.)

After the interview, Cosgrove believed that Ruolo "had excellent experience at the middle school level," that he demonstrated that "he was a successful middle school assistant principle already," that he "answered the questions well," that he "was very personable," and that he "would be received well at the [interview] committee level" and "would do a good job with the committee." (*Id.* ¶¶ 199–203.) Cosgrove therefore recommended that Ruolo advance to the interview committee stage, and contends that age, race, and gender were not factors in that decision or her decisions to recommend that any candidate advance to the next stage in the interview process or to withhold a recommendation that any candidate advance. (*Id.* ¶¶ 204–213.)

Miccio was also present at the interview and took notes. (*Id.* ¶ 214.) Miccio believed that Ruolo "was a very strong candidate," that his "answers to [their] questions demonstrated a comprehensive knowledge of middle school administration and ways of working with middle school aged children," and that his knowledge "was based on his years of experience as an assistant principal at the middle school level and as a teacher." (*Id.* ¶¶ 215–17.) Miccio thought "Ruolo was exactly the type of candidate [they] were looking for to fill the . . . Assistant Principal position," and recommended that Ruolo advance to the committee interview stage. (*Id.* ¶¶ 218–19.) Age, race, and gender were not factors in Miccio's decision to recommend Ruolo advance, nor were they factors in Miccio's decision to recommend any other candidate advance or not advance. (*Id.* ¶¶ 220–28.)

Similarly, Bergmann was present and took notes at the screening interview. (*Id.* ¶ 229.) Bergman left "with a very positive impression of . . . Ruolo," "impressed by [his] years of experience as a successful assistant principal . . . and as a teacher," finding that "Ruolo spoke passionately about building relationships with students [and that] [h]is educational philosophy especially resonated with [Bergmann] because his approach is similar to [Bergmann's]," and that

"Ruolo spoke knowledgeably about the Common Core Learning Standards and how at Yonkers the administration promoted a deep level of student comprehension in each standard before advancing to the next standard."  (*Id.* ¶¶ 231–33.)  Bergmann was "convinced" that Ruolo "possessed the qualifications that [they] sought in a successful Assistant Principal candidate," and recommended that Ruolo advance to the committee stage.  (*Id.* ¶¶ 234–35.)  Age, race, and gender were not factors in that decision, nor were they factors in Bergman's decision to recommend or not recommend that other candidates advance to the next stage in the interview process.  (*id.* ¶¶ 236–244.)

B.  Procedural History

Plaintiff filed the Complaint on May 26, 2015.  (Compl. (Dkt. No. 2).)  She was granted in forma pauperis status on June 5, 2015.  (Dkt. No. 3.)  Plaintiff filed an Amended Complaint on June 10, and a Second Amended Complaint on June 18, 2015.  (Am. Compl. (Dkt. No. 4); Second Am. Compl. (Dkt. No. 6).)  The Court issued an Order of Service on June 19, 2015. (Dkt. No. 7.)

Defendants filed pre-motion letters indicating the grounds on which they would move to dismiss on August 20 and 21, 2015.  (Letter from James A. Randazzo, Esq. to Court (Aug. 20, 2015) (Dkt. No. 16); Letter from Andrew R. Jones, Esq. to Court (Aug. 21, 2015) (Dkt. No. 17).)  Plaintiff opposed this request.  (Letter from Plaintiff to Court (Sept. 1, 2015) (Dkt. No. 18); Aff. in Opp'n to Mot. (Dkt. No. 19); Letter from Plaintiff to Court (Sept. 9, 2015) (Dkt. No. 22).)  However, Plaintiff consented to releasing Attorney Latino as a Defendant, and the Court ordered Latino dismissed from the case with prejudice on September 9, 2015.  (Dkt. No. 21, 29.)  The Court held a conference on November 23, 2015.  (*See* Dkt. (Nov. 23, 2015); *see also* Dkt. Nos. 35, 37, 39 (discussing whether Plaintiff could file an amended complaint).)

The Court held another conference on February 11, 2016 and adopted a briefing schedule. (*See* Dkt. (entry for Feb. 11, 2016); Order (Dkt. No. 43).) Defendants filed their Motion To Dismiss and accompanying documents on March 31, 2016. (Dkt. Nos. 44–46.) Plaintiff opposed the Motion to Dismiss, (Dkt. Nos. 47–48), and Defendants filed a reply, (Dkt. No. 51). On March 30, 2017, the Court issued an Opinion & Order granting in part and denying in part the Motion To Dismiss and granting Plaintiff leave to amend certain claims. (Opinion & Order (Dkt. No. 53).)

On April 14, 2017, Plaintiff filed the operative Third Amended Complaint against Defendants. (Third Am. Compl. (Dkt. No. 54).) Defendants filed an answer on May 5, 2017. (Answer (Dkt. No. 55).) The Court held a conference on June 15, 2017, and adopted a case management order. (*See* Dkt. (entry for June 15, 2017); Order (Dkt. No. 58).) On December 6, 2017, after discovery closed, Defendants filed a pre-motion letter indicating the grounds on which they would move for summary judgment, (Letter from James A. Randazzo, Esq. to Court (Dec. 6, 2017) (Dkt. No. 78)), which Plaintiff opposed, (Letter from Plaintiff to Court (Dec. 7, 2017) (Dkt. No. 79); Dkt. No. 81 (same)). The Court held a conference on December 14, 2017 and adopted a briefing schedule. (*See* Dkt. (entry for Dec. 14, 2017); Order (Dkt. No. 80).)

Defendants filed the instant Motion for Summary Judgment and accompanying papers on February 14, 2018. (Not. of Mot; Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Mem.") (Dkt. No. 84); Randazzo Decl; Defs' 56.1.) Plaintiff filed a letter opposing the Motion with accompanying exhibits on March 27 and 28, 2018, her 56.1 Statement and Declaration on April 17, 2018, and a memorandum of law on April 25, 2018. (Compliance Letter; Pl.'s 56.1; Pl.'s Decl.; Pl.'s Mem. of Law in Opp'n to Mot. for Summ. J. ("Pl.'s Mem.") (Dkt. No. 92).)

Defendants filed a reply on May 4, 2018. (Reply Mem. of Law in Supp. of Mot. for Summ. J. ("Defs.' Reply") (Dkt. No. 93).)

<u>II. Discussion</u>

<u>A. Standard of Review</u>

Summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 123–24 (2d Cir. 2014) (same). "In determining whether summary judgment is appropriate," a court must "construe the facts in the light most favorable to the non-moving party and . . . resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted); *see also Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018) (same). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004).

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," in which case "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP*, 735 F.3d 114, 123 (2d Cir. 2013) (alteration and internal quotation marks omitted). Further, "[t]o survive a [summary judgment] motion . . . , [a nonmovant] need[s] to create more than a 'metaphysical' possibility that his allegations were correct; he need[s] to 'come forward with specific facts showing that there is a genuine issue for trial,'" *Wrobel v. County of Erie*, 692 F.3d 22, 30 (2d

Cir. 2012) (emphasis omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), "and cannot rely on the mere allegations or denials contained in the pleadings," *Guardian Life Ins. Co. v. Gilmore*, 45 F. Supp. 3d 310, 322 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009) ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . ."). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

"On a motion for summary judgment, a fact is material if it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (internal quotation marks omitted). At this stage, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Brod*, 653 F.3d at 164 (internal quotation marks omitted). Thus, a court's goal should be "to isolate and dispose of factually unsupported claims." *Geneva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 495 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986)). However, a district court should consider only evidence that would be admissible at trial. *See Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998). "[W]here a party relies on affidavits or deposition testimony to establish facts, the statements 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or

declarant is competent to testify on the matters stated.'" *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (quoting Fed. R. Civ. P. 56(c)(4)).

Finally, the Second Circuit has instructed that when a court considers a motion for summary judgment, "special solicitude" should be afforded a pro se litigant, *see Graham v. Lewinski,* 848 F.2d 342, 344 (2d Cir. 1988); *see also Gomez v. New York City Police Dep't*, No. 15-CV-4036, 2018 WL 1583291, at *4 (S.D.N.Y. Mar. 27, 2018) (same), and a court should construe "the submissions of a pro se litigant . . . liberally" and interpret them "to raise the strongest arguments that they suggest," *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006) (italics and internal quotation marks omitted). Nonetheless, "proceeding pro se does not otherwise relieve a litigant of the usual requirements of summary judgment, and a pro se party's bald assertions unsupported by evidence . . . are insufficient to overcome a motion for summary judgment." *Houston v. Teamsters Local 210, Affiliated Health & Ins. Fund-Vacation Fringe Ben. Fund*, 27 F. Supp. 3d 346, 351 (E.D.N.Y. 2014) (internal quotation marks omitted); *see also Flores v. City of New York*, No. 15-CV-2903, 2017 WL 3263147, at *2 (S.D.N.Y. July 31, 2017) (same). Indeed, "[w]hile summary judgment must be granted with caution in employment discrimination actions, . . . a plaintiff must prove more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Aspilaire v. Wyeth Pharm., Inc.*, 612 F. Supp. 2d 289, 302 (S.D.N.Y. 2009) (citations and internal quotation marks omitted).

B. Analysis

Plaintiff claims that Defendants violated the ADEA, the Fourteenth Amendment's Equal Protection Clause, and the NYSHRL by failing to recommend and hire her for the Assistant Principal position at Copper Beech based on her age, race, and gender. (*See generally* Third Am. Compl.) All of these claims are analyzed under the burden-shifting framework set forth in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See D'Cunha v.*

*Genovese/Eckerd Corp.*, 479 F.3d 193, 194–95 (2d Cir. 2007) (per curiam) ("Claims under the

ADEA are governed by the three-step burden-shifting framework set forth in *McDonnell*

*Douglas Corp. v. Green*." (citation omitted)); *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir.

2004) (explaining that the elements of an equal protection claim under § 1983 and a claim under

Title VII are the same and thus the burden-shifting framework applies to both); *Kassel v. City of*

*Middletown*, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017) ("[T]he Second Circuit analyzes claims

pursuant to NYSHRL under the familiar three-part framework set forth by the Supreme Court in

*McDonnell Douglas*.").

> Under *McDonnell Douglas*, a plaintiff bears the initial burden of proving by a
> preponderance of the evidence a prima facie case of discrimination; it is then the
> defendant's burden to proffer a legitimate non-discriminatory reason for its actions;
> the final and ultimate burden is on the plaintiff to establish that the defendant's
> reason is in fact pretext for unlawful discrimination.

*Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014). However for ADEA claims,

at the third step, a plaintiff must show that the discriminatory motive "was a but for cause of" the

adverse employment action, rather than merely a motivating factor. *See McCormack v. IBM*,

145 F. Supp. 3d 258, 266 (S.D.N.Y. 2015) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167,

173 (2009)); *see also Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010)

(same).

1.  ADEA Claim[18]

The ADEA makes it "unlawful for an employer to fail or refuse to hire . . . any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Defendants concede that Plaintiff stated a prima facie ADEA claim, but argue that they articulated legitimate, non-discriminatory reasons for not hiring Plaintiff for the Assistant Principal job, and Plaintiff failed to create a triable issue as to whether these reasons were a pretext for discrimination. (Defs.' Mem. 5–8.) The Court agrees.

Defendants contend that they chose not to hire Plaintiff, and instead hired Ruolo, for the Assistant Principal position because he was a better qualified candidate. (*Id.*) Specifically, Ruolo had experience working as a middle school assistant principal, a position in which he received tenure, in the Yonkers school district, and his resume demonstrated that he coordinated the administration of state-wide assessments that incorporated changes in the Common Core Learning Standards. (Defs.' 56.1 ¶¶ 188–89, 190–92, 197–98.) Ruolo therefore advanced to the screening interview stage, where all of his interviewers thought he performed well, showing his qualifications for the job, and therefore recommended him to the next interview stage, contending that age was not a factor in that decision. (*Id.* ¶¶ 199–203, 205, 208, 215–20, 223, 231–36, 239.) Ruolo's age is not mentioned on his application, (Randazzo Decl. Ex. U (resume); *id.* Ex. V (OLAS application)), or in any of the interview notes, (*id.* Exs. W, X, Y).

By contrast, no member of the review board recommended that Plaintiff advance to screening interview stage, so she was not one of the 20 out of 300 applicants that interviewed for

---

[18] This claim is only against the District, because individuals cannot be held liable for violations of the ADEA. *See Knutson v. G2 FMV, LLC*, No. 14-CV-1694, 2018 WL 286100, at *9 (S.D.N.Y. Jan. 3, 2018) ("The law in the Second Circuit on this question is clear. . . . [i]ndividual supervisors may not be held personally liable under the ADEA." (internal quotation marks omitted)).

the Assistant Principal position.  (Defs.' 56.1 ¶¶ 165, 169, 174, 178.)  Cosgrove and Bergmann both contend that this decision was not based on Plaintiff's age, and indeed they were unaware of Plaintiff's age until they reviewed her EEOC Charge in October 2014.  (*Id.* ¶¶ 173, 177, 181, 184.)  After reviewing Plaintiff's application, Cosgrove determined that Plaintiff did not have "middle school experience," which she noted was "the meat and potatoes" of "the experience [they] were looking for" in a candidate, nor did she have "a successful background in middle school application."  (*Id.* ¶¶ 153, 155–59.)  Moreover, Cosgrove found nothing on Plaintiff's resume showing that Plaintiff had a "thorough understanding of the Common Core Learning Standards," because Plaintiff had "no work experience in a school district during the time [they] were being implemented" in 2012, nor did she "list any training that she sought to bring herself up to speed with" the Standards.  (*Id.* ¶¶ 160–64.)  Indeed, Plaintiff's application accurately stated that she was never appointed tenure in a public school district in New York and had two years of experience working with middle school grades—that is, grades four through eight.  (*Id.* ¶¶ 102, 104–106.)  And, regardless of which OLAS application version was considered, neither lists any school administrative experience.  (*See* May 20 Application; May 28 Application.)

Plaintiff has failed to show that these proffered reasons are a pretext for age discrimination under the ADEA.  Although Plaintiff has not clearly identified what specific facts indicate age discrimination, the Court has construed her submissions liberally and will address each potentially relevant fact she raises.

Plaintiff's main pretext argument is that she is more qualified than Ruolo for the position.  (*See* Pl.'s Mem. 5–7.)  Indeed, she devotes a substantial part of her submissions to discussing the ways in which she believes she was qualified for the Assistant Principal job and why Defendants discounted the value of her experience.  (*E.g.*, Pl.'s 56.1 ¶¶ 53–54, 155–56, 162; Pl.'s Mem. 2–

7.)  However, even assuming Plaintiff possessed experience that she believes qualified her for the position, it is undisputed that most of that experience was not actually listed in her application materials.  First, her resume did not list the experiences comprising her purported background in middle school education, (*see* Resume; *see also* Defs.' 56.1 ¶ 58 (working at John C. Hart Library); *id.* ¶ 69 (working at the Mount Vernon Middle School or with middle school students); *id.* ¶ 66 (substitute teaching); *id.* ¶ 85 (working as a pastor that included educating or teaching students)), her knowledge of the Common Core Learning Standards, (*see id.* ¶ 51; Pl.'s Dep.  84), *any* position as an Assistant Principal or Principal at *any* job, (*see* Defs.' 56.1 ¶¶ 73–74 (listing her position with Greenburg-Graham as an administrative intern only)), *any* employment in the public education system after the 1969-70 school year, (*see id.* ¶¶ 75–76), or any of the other employment positions Plaintiff now identifies as relevant experience, (*see id.* ¶ 88 (not listing the SEEK program, Mont Olivet Baptist Church, CAP in New Jersey, or the Mount Vernon Board of Education)).  Moreover, even assuming that Defendants should have considered Plaintiff's emailed cover letter, (*but see* Job Posting (requiring an online application through OLAS); July 2, 2014 Letter (noting that OLAS "is the only application method utilized by [the] [D]istrict for certified positions" and that "[i]n the interest of fairness, [they] are unable to process paper applications")), it does not contain additional information that renders Cosgrove's proffered rationales pretextual, because it does not list experience working at a middle school or "work experience in a school district during the time [the Common Core Learning Standards]" were being implemented or "any training that [Plaintiff] sought to bring herself up to speed with" them, (Defs.' 56.1 ¶¶ 155–59, 160–64).  Rather, it states only that Plaintiff "worked successfully with middle school students elsewhere and also at Copper Beech" through supervising the John C. Hart Memorial library event and substitute teaching and that she

"ha[s] no problem understanding Common Core Learning Standards" because she has helped "develop curricula for various groups."  (Cover Letter.)

Furthermore, to the extent that Plaintiff thinks that Defendants should not have discounted her non-school experience, she provides no evidence suggesting that this was age discrimination.  *See McCormack*, 145 F. Supp. 3d at 266 (requiring the plaintiff to present facts showing that her age was a "but for cause" of adverse employment action).  Indeed, Cosgrove refused to consider Ruolo's previous experience working with disabled children at a Jewish Community Center because it did not "appear to be connected to public school at all."  (Defs.' 56.1 ¶¶ 249–51.)  *See Grady v. Affiliated Cent., Inc.*, 130 F.3d 553, 561 (2d Cir. 1997) ("The record is perhaps most remarkable for the presence of affirmative evidence . . . that older and younger trainees were in fact treated the same."); *Venezia v. Luxoticca Retail N. Am. Inc*., No. 13-CV-4467, 2015 WL 5692146, at *10 (S.D.N.Y. Sept. 28, 2015) ("[W]ithout any evidence that Defendants made discriminatory comments toward Plaintiff because of his age or evidence that Defendants treated younger employees differently, Plaintiff has failed to establish any facts that would support an inference of discrimination based on his age."), *aff'd*, 699 F. App'x 53 (2d Cir. 2017); *Holowecki v. Fed. Exp. Corp.*, 644 F. Supp. 2d 338, 353 (S.D.N.Y. 2009) (noting that the plaintiff identified "a handful of younger couriers" who were not terminated, but "fail[ed] to demonstrate how any of these individuals were treated differently under circumstances similar to his"), *aff'd*, 382 F. App'x 42 (2d Cir. 2010).

In the place of any evidence of discriminatory intent, Plaintiff posits only her disagreement with Defendants' decision to find her less qualified than another (apparently younger) candidate.  However, "[w]hile [the Court] must ensure that employers do not act in a discriminatory fashion, [it] do[es] not sit as a super-personnel department that reexamines an

entity's business decisions." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); *see also Sassaman v. Gamache,* 566 F.3d 307, 314 (2d Cir. 2009) ("[I]t is not the role of federal courts to review the correctness of employment decisions or the processes by which those decisions are made.").  Rather, to defeat summary judgment, "[P]laintiff's credentials would have to be so superior to the credentials of the person selected for the job"—Ruolo—"that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over . . . [P]laintiff for the job in question." *Byrnie v. Town of Cromwell, Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001) (internal quotation marks omitted); *see also Wharff v. State Univ of New York*, 413 F. App'x 406, 408 (2d Cir. 2011) ("Where a decision to promote one person rather than another is reasonably attributable to an honest even though partially subjective evaluation of their qualifications, no inference of discrimination can be drawn." (alterations and internal quotation marks omitted)).  Plaintiff's subjective disagreement with Defendants' assessment of her qualifications does not make their decision discriminatory.  *See Testa v. CareFusion*, No. 14-CV-05202, 2018 WL 1611378, at *8 (E.D.N.Y. Apr. 3, 2018) ("An employee's subjective disagreement with his [or her] manager's evaluation of his [or her] [qualifications] is not a viable basis for a discrimination claim [under the ADEA]."); *Bucek v. Gallagher Bassett Servs., Inc.*, No. 16-CV-1344, 2018 WL 1609334, at *11 (S.D.N.Y. Mar. 29, 2018) ("[The] [p]laintiff's subjective disagreement with [Defendants'] reliance on [a hiring criteria] does not make it discriminatory.") (collecting cases); *Witkowich v. Gonzales*, 541 F. Supp. 2d 572, 582 (S.D.N.Y. 2008) ("[The] [p]laintiff's disagreement with the way in which the [employer] weighed his and [a younger candidate]'s qualifications does not create an issue of material fact.").  Plaintiff cites no evidence suggesting that her age played *any* role in the decision not to hire her, such as comments about her (or Ruolo's) age or any evidence

suggesting that only younger (and underqualified) candidates advanced to the screening interview stage. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (holding that "rejection of the defendant's proffered reasons [does not] compel[] judgment for the plaintiff," because the plaintiff "at all times bears the ultimate burden of persuasion" that the decision was intentionally discriminatory (internal quotation marks omitted)); )); *id.* at 524 ("That the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason of [age] is correct."). Ultimately, this is not a case in which "a reasonable jury could conclude that" Defendants' decision to hire Ruolo "was so lacking in merit as to call into question its genuineness" merely because it did not consider Plaintiff's non-school-based or older work experience as middle school education experience. *Dister v. Cont'l Grp., Inc.*, 859 F.2d 1108, 1116 (2d Cir. 1988); *see also Davis v. State Univ. of New York*, 802 F.2d 638, 642 (2d Cir. 1986) ("[T]he reasons for hiring [another candidate] were not so ridden with error that [the employer] could not have honestly relied upon them."). Rather, Defendants made a rational judgment that Ruoulo was a better candidate than Plaintiff—and the other 299 people that applied for the Assistant Principal job—and, absent *any* evidence that that decision was motivated even in part because of Plaintiff's age, the Court should not substitute its own judgment for Defendants. *See Byrnie,* 243 F.3d at 103 (noting that where the younger candidate was not unqualified and the employer was not unreasonable in selecting that candidate "in light of a comparison of her paper credentials with [the plaintiff's]," the plaintiff failed to show pretext).

Construing her submissions liberally, Plaintiff also contends that Defendants' reasons were pretextual because her application materials were not actually reviewed until after the District was notified of her EEOC complaint, in October 2014. (*See* Pl.'s 56.1 ¶¶ 136, 149, 151,

167, 169, 187.) While this proposition, if supported by evidence, *could* create a dispute of fact as to whether the reasons Defendants proffered for failing to recommend Plaintiff for a screening interview and failing to hire her were a pretext for age discrimination created amidst litigation, Plaintiff has provided no such evidence here. It is undisputed that Plaintiff's name appears on the list of applicants considered, (Defs.' 56.1 ¶ 149), and the review board reviewed each candidate's application and resume, (*id.* ¶ 151; *see also* Pl.'s 56.1 ¶ 167 (stating that Plaintiff does "not dispute what actions [Defendants] say [they] took" but she "cannot agree that [the] screening and hiring process is what it should be")).

However, Plaintiff now claims her application was not reviewed because she was told she was not certified and would not be considered or hired, citing her experiences with the District and the July 2, 2014 letter she received from Human Resources. (Pls.' 56.1 ¶ 136; Compliance Letter 2.) This evidence does not support Plaintiff's claim. In 2004 and 2014, Plaintiff visited the Board of Education to seek administrative employment, and was told that she was not listed on their online registry as certified; however, she maintains that her name *was* on the list in 2004, she is actually certified, and that the District always finds her certification for substitute teaching positions. (Defs.' 56.1 ¶¶ 39–40, 260, 263, Pl.'s 56.1 ¶¶ 38–39.) As an initial matter, none of these interactions was with any decisionmaker in the Assistant Principal hiring process, nor do these interactions indicate that Plaintiff's application *was not* considered for the position because the decisonmakers concluded she was not certified—indeed, the 2004 interaction related to an elementary school position that Plaintiff does not remember applying for. (Defs.' 56.1 ¶¶ 264–65; *see also* Davis. Dep. 30 (testifying that she "had no involvement" in the hiring process for the Assistant Principal position).) At most, they show that Plaintiff was told by District

employees that *if* she was not certified on their list, her application would not be considered for a position with the District.  (Defs.' 56.1 ¶¶ 40, 263.)[19]

The July 2, 2014 letter, sent after Plaintiff applied, similarly states that "[the] [D]istrict requires teaching certification for all of [its] teaching positions," and indicates where positions are posted and where to apply on OLAS.  (July 2, 2014 Letter.)  However, the letter does not mention the Assistant Principal position or Plaintiff's application, let alone state that Plaintiff would not be considered for the position because she was not certified.  (*Id.*)  Nor is there any evidence that any member of the review board or the hiring process claimed that Plaintiff's lack of certification was the reason she was not hired.  Rather, as Plaintiff noted in her cover letter, (Cover Letter), and testified to at her deposition, it is possible her certification was not listed in the District's database because she was certified prior to 1991 and therefore listed on another website called Teach, (Pl.'s Dep. 75–76).  Even assuming Plaintiff's application was not considered because she was incorrectly deemed not certified, there is no evidence in this record that Defendants ignored Plaintiff's certification because of her age—such as evidence suggesting Defendants knew or were told that her certification would be listed on Teach but refused to check it—and therefore this fact is insufficient to create a dispute about whether any of the reasons for not hiring Plaintiff were pretextual.  *See Moore v. Kingsbrook Jewish Med. Ctr.*, No. 11-CV-3625, 2013 WL 3968748, at *8 (E.D.N.Y. July 30, 2013) (noting that "personnel decisions . . . that are incorrect do not support a federal claim unless they are tainted, at least in

_____

[19] To the extent that Plaintiff argues that she was told she would *not* be hired by Davis on May 16, 2014, (Pl.'s Mem. 2), this claim is belied by the record, (Defs.' 56.1 ¶ 40; Davis Dep. 47, 50 (testifying that she had no knowledge of whether Plaintiff was actually certified at the time, but "told [Plaintiff] that if she was not certified, her application would not be considered"); Pl.'s Dep 59–60 (testifying that she does "not remember exactly" the contents of the conversation between Plaintiff and Davis).)

part, by illegal discrimination" (alteration and internal quotation marks omitted)); *see also Brown v. New York City Dep't of Educ.*, 513 F. App'x 89, 91 (2d Cir. 2013) ("Even if [the plaintiff] were correct that the DOE erred in concluding that she was ineligible for an H-1B visa . . . the record is devoid of evidence indicating that that reason was a pretext for discrimination rather than simply a good faith mistake.").[20] Lastly, to the extent Plaintiff infers discrimination from the fact that the District found her certification for substitute *teaching*, but not for *administration*, (*e.g.*, Pl.'s 56.1 ¶ 179), these are different certifications, and if anything, suggest that the District does not generically discriminate on the basis of age.

Plaintiff also concedes that Cosgrove and Bergmann did not know Plaintiff's age prior to reviewing her EEOC complaint, but contends that this shows they never read her email application, which lists employment dates prior to 1970. (Pl.'s 56.1 ¶ 181.) While it is certainly a reasonable inference that Defendants could have deduced Plaintiff's age from her application, this fact, without more, does not permit an inference that Defendants decided not to hire Plaintiff *based on* her age. *See Boyer v. Riverhead Cent. Sch. Dist.*, No. 05-CV-54955, 2008 WL 11412042, at *10 (E.D.N.Y. Sept. 11, 2008) (finding that the plaintiff testified "she was never asked about her age during the [job] interview," and that "[d]espite the purported subterfuge Plaintiff infers was inherent in the [interview] question about the dates of her prior positions, she has produced no evidence to support such an inference"), *adopted in part, rejected in part*, 2008 WL 11412043 (E.D.N.Y. Sept. 29, 2008), *aff'd*, 343 F. App'x 740 (2d Cir. 2009); *Shaheen v. Gonzales*, No. 05-CV-8400, 2006 WL 3164763, at *7 (S.D.N.Y. Nov. 1, 2006) (explaining that

---

[20] Plaintiff also contends that "untrue statements and fabricated evidence" in the District's response to her EEOC complaint show that her application was not reviewed until she filed her compliant. (Pl.'s 56.1 ¶ 151.) However, she does not say what those statements were, let alone how they demonstrate that her application was never reviewed. Indeed, Defendants conceded that Plaintiff was certified in their response to the EEOC complaint. (Defs.' EEOC Opp'n 2 ¶ 4.)

while "the law school graduation dates" listed on certain forms were "sufficient to meet his minimal burden . . . on the prima facie case, [the] plaintiff offers no direct evidence that the [defendant] decisionmakers had actual knowledge of the age discrepancy between him and [the other candidate]"); *Strycharz v. Verizon*, No. 01-CV-1050, 2002 WL 31856820, at *3 (S.D.N.Y. Dec. 19, 2002) (explaining that the plaintiff did not contest that "the management disciplinary committee who decided to fire him did not know his age"); *DeSoignies v. Credit Lyonnais*, 617 F. Supp. 707, 712 (S.D.N.Y. 1985) (noting that "the plaintiff did not show any instances of use or compilation of [the employees' dates of birth and age] near to the time of [the] plaintiff's discharge," and "the [c]ourt d[id] not infer from [the] defendant's awareness of the age of its employees . . . that it used that information in making decisions such as the decision to terminate plaintiff"); *cf. Terry v. Ashcroft*, 336 F.3d 128, 140 (2d Cir. 2003) (explaining that if handwritten notations as to the candidates' birth dates were on a memo listing the "Best Qualified" candidates at the time the employer made his decision, "a trier-of-fact could infer that [the employer] considered age").

Plaintiff mentions other facts relating to her age, but these also fail to generate a factual dispute regarding pretext. First, Plaintiff contends that a member of the Board of Education incited "ageist remarks" at a meeting on February 4, 2016, but does not state who this person was, who made the allegedly ageist remarks, or how these relate to the District's undisputed nondiscrimination policy in *hiring* employees, let alone the decision to hire Plaintiff. (Pl.'s 56.1 ¶ 133.)[21] In any event, such "'stray remarks, even if made by a decisionmaker, do not constitute

---

[21] Indeed, while the School Board is involved in the final decision to appoint someone to the Assistant Principal position, the Board never reviewed Plaintiff's application because she did not advance to the interview stage; moreover, this allegation does not implicate Cosgrove, who participated only in the initial screening stage. (Defs.' 56.1 ¶¶ 145–46.)

sufficient evidence to make out a case of employment discrimination'" under the ADEA, *Parron v. Herbert*, No. 17-CV-3848, 2018 WL 2538221, at *9 (S.D.N.Y. May 18, 2018) (alteration omitted) (quoting *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1996)), particularly when they are not linked in any way to the decision not to hire Plaintiff, nor provided alongside other evidence of discriminatory intent, *Testa*, 2018 WL 1611378, at *8 (noting that that "stray remarks made months before [the] plaintiff's termination are insufficient to demonstrate a discriminatory intent" and "[i]n light of the context and the entire record, no rational jury could infer a causal connection between the comment and [the] plaintiff's . . . termination"); *see also Boyle v. McCann-Erickson, Inc.*, 949 F. Supp. 1095, 1101 (S.D.N.Y. 1997) (noting that "ageist statements. . . are not sufficient to satisfy [the] [p]laintiff's ultimate burden").[22]

Plaintiff also asserts that the interview committee has no diversity, because it had no "older African American wom[e]n such as [Plaintiff]," but cites no evidence to this effect. (*Id.* ¶ 139.) Moreover, Plaintiff cites no evidence regarding the interviewers' ages. *See Esar v. JP Morgan Chase Bank N.A.*, No. 15-CV-382, 2018 WL 2075421, at *9 (E.D.N.Y. May 3, 2018) ("[The] [p]laintiff's claim that there is an inference of discrimination from the fact that [the decisionmaker] is 'younger' than [the] [p]laintiff also fails because, as far as the court is aware, there is no record evidence concerning [the decisionmaker's] age." (citation omitted)). In any event, even if the review board comprised only individuals younger than Plaintiff, let alone individuals who were also not the same race and gender as her, this fact *alone* does not show that their proffered reasons for not hiring her are a pretext for her age. *See Esar*, 2018 WL 2075421,

---

[22] Plaintiff also contends that she "understand[s] that discrimination suits have been filed against the District," but "ha[s] not seen them," and fails to describe them, let alone cite to them in the record, such that they could reasonably be linked to the hiring decision at issue here. (Pl.'s 56.1 ¶ 143.)

at *9 (finding that the plaintiff failed to meet her prima facie burden just by asserting that the decisionmaker "is younger than [the] [p]laintiff"); *Thompson v. Tom Vazquez Janitorial*, No. 05-CV-808, 2006 WL 3422664, at *3–4 (E.D.N.Y. Nov. 28, 2006*)* (noting that the fact that "[t]he supervisor who made the decision to terminate [the plaintiff] . . . was only three years younger than [the plaintiff]" did not "suggest that his termination was related to his age," and in any event, the plaintiff failed to show the supervisor's proffered reasons were pretextual); *see also McCormack*, 145 F. Supp. 3d at 266 (requiring the plaintiff to prove that age "was a but for cause" rather than merely a motivating factor); *cf. Tremalio v. Demand Shoes, LLC*, No. 12-CV-357, 2013 WL 5445258, at *8 (D. Conn. Sept. 30, 2013) (declining to draw an inference against the plaintiff where "the record d[id] not indicate the extent to which each of the three decision-makers was involved, and the extent to which the decision was made by the significantly younger [supervisor]"); *Bennett v. Solis*, 729 F. Supp. 2d 54, 68 (D.D.C. 2010) (noting that the plaintiff "lack[ed] any evidence of age-based animus on the part of the decisionmaker . . . who was in her mid–60's and only a few years younger than [the] plaintiff when she made the decision to terminate him"). Additionally, Plaintiff cites to "statistics" purportedly showing "a policy of adverse hiring of the older African American woman." (Pl.'s Mem. 7.) However, these statistics do not establish what age these employees were when they applied, who else they competed against for the position, what prior administrative experience they had, or who decided to hire them. (Compliance Letter Ex. C.) Moreover, the exhibit containing these statistics lists several employees over the age of 60. (*Id.* (listing Laura Cuddy, Stewart Hanson, Marry Ellen Herzog, Raymond Morningstar, Jr., George Stone, Susan Strauss, Theresa Wilkowski, and Lorraine Yurish).) Finally, Plaintiff asserts that she was "discriminated against because of [her] age," (Pl.'s Mem. 7), but this conclusory statement, restating her prima facie case without any

evidence, is insufficient to show pretext. *See Miller v. Nat'l Ass'n of Sec. Dealers, Inc.*, 703 F.

Supp. 2d 230, 248 (E.D.N.Y. 2010) ("When an employer accused of discrimination provides

convincing evidence explaining its conduct, and the plaintiff's case rests on conclusory

allegations such as these, it is proper for a court to conclude that there is no genuine issue of

material fact and to grant summary judgment for the employer."); *see also Brenner v. City of

New York Dep't of Educ.*, 659 F. App'x 52, 54 (2d Cir. 2016) (rejecting "conclusory" argument

as "insufficient to carry [the plaintiff's] step-three burden under either a but-for or motivating

factor-standard").

The Court therefore grants the District's Motion for Summary Judgment on the ADEA

claim.

### 2. Section 1983 Claim

Plaintiff also brings a § 1983 claim, alleging that Defendants violated her rights under the

Equal Protection Clause of the Fourteenth Amendment by discriminating against her on the basis

of her race and gender. (Third Am. Compl.; Pl.'s Mem. 7–8.) Defendants argue that Plaintiff

has failed to create a dispute of material fact regarding whether the proffered reasons for not

hiring her were a pretext for race or gender discrimination, and in any event the district cannot be

held liable under *Monell*. (Defs.' Mem. 8–12.)[23] The Court will address each argument in turn.

---

[23] Defendants also argue briefly that Cosgrove was not personally involved in the
constitutional violation. (Defs.' Mem. 8.) However, because Cosgrove participated directly in
the allegedly discriminatory hiring process—she reviewed Plaintiff's application and did not
recommend her for a screening interview and did recommend Ruolo—this argument fails. *See
Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (listing as a category of personal
involvement when "the defendant participated directly in the alleged constitutional violation");
*Barnes v. Ross*, 926 F. Supp. 2d 499, 508 (S.D.N.Y. 2013) (holding that a plaintiff sufficiently
alleged personal involvement where the defendant personally interviewed the plaintiff in
connection with his allegedly discriminatory treatment). She can be liable for discrimination
even if she was not involved in the ultimate decision to hire Ruolo. (Defs.' 56.1 ¶ 147.)

### a. Pretext

Plaintiff's § 1983 claim is analyzed under the *McDonnell Douglas* burden-shifting standard. *See Feingold*, 366 F.3d at 159. Defendants concede that Plaintiff has stated a prima facie case of race and gender discrimination, but argue that they had legitimate, non-discriminatory reasons for deciding not to invite Plaintiff to a screening interview and hiring Ruolo instead, and that Plaintiff has not created a fact dispute that these reasons were a pretext for discrimination. (Defs.' Mem. 9; Defs.' Reply 3.) The Court agrees.

The Court has already discussed Cosgrove's and the other review board members' proffered reasons for not selecting Plaintiff for a screening interview and for recommending Ruolo for the Assistant Principal position. To create a factual dispute regarding whether these reasons were pretextual, Plaintiff may show that Defendant's proffered justifications are "false," or she "may instead rely on evidence—circumstantial or otherwise—showing that [her gender and race] w[ere] . . . motivating factor[s]" in the decision to interview, and ultimately hire, Ruolo instead of Plaintiff. *Holtz v. Rockefeller & Co., Inc.* 258 F.3d 62, 81 (2d Cir. 2001) (citations and internal quotation marks omitted); *see also Ya-Chen Chen v. City Univ. of New York*, No. 11-CV-320, 2014 WL 1285595, at *7 (S.D.N.Y. Mar. 31, 2014) (requiring the plaintiff to produce "sufficient evidence support a rational finding that . . . more likely than not discrimination was the real reason for the employment action" (alterations and internal quotation marks omitted)), *aff'd*, 805 F.3d 59 (2d Cir. 2015). Although she identifies several facts she believes show discrimination, Plaintiff has not satisfied this standard.[24]

---

[24] Plaintiff does not discuss the decisions of the interview committee, the Superintendent, or the School Board, all of whom participated in the later stages of the interview process with Ruolo but none of whom was sued here. She does contend that the Superintendent is "merely a figurehead or rubber stamp" and his decision is pre-determined by the recommendations he receives, but provides no evidence for this assertion. (Pl.'s 56.1 ¶¶ 146–47.)

Plaintiff relies on many of the same pretext arguments she did in the ADEA context. First, Plaintiff argues that Defendants hired Ruolo, a male Caucasian who she believes is less qualified and less experienced than her—in other words, her prima facie case. (Pl.'s Mem. 10; Compliance Letter 3.) As in the ADEA context, this is insufficient to show that Defendants' proffered reasons were a pretext for gender or race discrimination. *See Bucek*, 2018 WL 1609334, at *11 ("Plaintiff's subjective disagreement with [Defendants'] reliance on [a hiring criteria] does not make it discriminatory."); *Nguyen v. Dep't of Corr. & Cmty. Servs.*, 169 F. Supp. 3d 375, 394 (S.D.N.Y. 2016) (rejecting the plaintiff's "subjective belief that he was more qualified for the position," including that "he had greater experience, or 'more seniority,'" as insufficient to show pretext); *Concepcion v. City of New York*, No. 15-CV-2156, 2016 WL 386099, at *14 (S.D.N.Y. Jan. 29, 2016) ("[Plaintiff's] subjective assessment of her own qualifications is insufficient to create a genuine factual issue as to whether the [defendant's] proffered reason for its hiring decisions are pretext for discrimination."), *aff'd*, 693 F. App'x 31 (2d Cir. 2017); *Estrada v. Lehman Bros.*, No. 99-CV-8559, 2001 WL 43605, at *5 (S.D.N.Y. Jan. 18, 2001) ("The mere fact that [the plaintiff] may disagree with his employer's actions or think that his behavior was justified does not raise an inference of pretext."); *see also Smith v. Ward Leonard Elec. Co.*, No. 00-CV-3703, 2004 WL 1661098, at *9 (S.D.N.Y. July 23, 2004) (holding that the plaintiff could not establish pretext "on his weak prima facie case alone"). This is particularly true where Plaintiff does not argue that the criteria Defendants relied on were discriminatory; indeed, it is undisputed that they were listed in the job posting. (*See* Job Posting.) *See MacBain v. Smiley Bros. Inc.*, No. 10-CV-1561, 2013 WL 621932, at *12 (N.D.N.Y. Feb. 19, 2013) (noting that the plaintiff provided no "objective evidence" showing that "she was not actually terminated according to the neutral criteria of seniority but rather . . .

for discriminatory reasons"); *Bagdasariajn v. O'Neill*, No. 00-CV-258E, 2002 WL 1628722, at

*5 (W.D.N.Y. July 17, 2002) ("As the Second Circuit Court of Appeals has held, . . . where an

employer uses objective or verifiable standards and makes selections in a nondiscriminatory

fashion, he or she can decide which employee is most qualified." (alterations and internal

quotation marks omitted)).

Plaintiff does not point to any other facts in the record indicating that Defendants'

decision was motivated even in part by Plaintiff's gender or race. *See St. Mary's Honor Ctr.*,

509 U.S. at 511 (holding that "rejection of the defendant's proffered reasons [does not] compel[]

judgment for the plaintiff," because the plaintiff "at all times bears the ultimate burden of

persuasion" that the decision was intentionally discriminatory (internal quotation marks

omitted)).  As to race, Plaintiff avers that "to [her] knowledge[,] the instant . . . lawsuit does not

mention race," which the Court finds odd.  (Pl.'s Decl. ¶ 123.)  In any event, Ruolo's race is not

mentioned on his application, (Randazzo Decl. Exs. U, V), the interviewers do not mention race

(or gender) in their notes from his screening interview, (*id.* Exs. W, X, Y), and they contend that

these were not factors in choosing Ruolo or not recommending other candidates. (Defs.' 56.1

¶¶ 206–07, 209–10, 212–13, 221–22, 224–25, 227–28, 237–38, 240–41, 243–44.)  *Cf. Nguyen*,

169 F. Supp. 3d at 389 (finding that mere discussion of race in an interview alone does not

"reflect any discriminatory animus on the part of [the] interviewers").  Similarly, it is undisputed

that Plaintiff's race is not mentioned in her application materials, (Resume; May 20 Application;

May 28 Application), and that Cosgrove and Bergmann did not know Plaintiff's race when they

evaluated her application.  (Defs.' 56.1 ¶¶ 180, 182, 185.)[25]  *See, e.g.*, *Pena-Barrero v. City of*

---

[25] Plaintiff again argues that this proves her emailed application was never read, because
it mentions her work with an African Methodist Episcopal Church.  (Pl.'s 56.1 ¶ 182.)   The
Court notes that the resume submitted with Plaintiff's OLAS application states only "Bethel

*New York*, No. 14-CV-9550, 2017 WL 1194477, at *13 (S.D.N.Y. Mar. 30, 2017) ("[B]ecause it is undisputed that [the defendants] did not know [the] [p]laintiff was Colombian when [the] [p]laintiff worked for them, . . . statements [mentioning race or national origin] do not suffice to show that [the] [d]efendants' reasons for terminating [the] [p]laintiff were pretext for race or national origin discrimination." (citations omitted)), *aff'd*, 2018 WL 1181180 (2d Cir. Mar. 7, 2018).  Plaintiff does argue that the interview committee had no African Americans on it, but, even assuming this was supported by evidence, it is alone insufficient to show Plaintiff was not hired because of her race.  *See Henny v. New York State*, 842 F. Supp. 2d 530, 557 (S.D.N.Y. 2012) (collecting cases holding that the mere fact that a plaintiff is of a different race than the decisionmaker is insufficient to show that the decisionmaker's conduct was motivated by racial discrimination).

As to gender, Plaintiff asserts that "[i]t is likely that a preponderance of women were qualified and . . . applied and that a preponderance of women were rejected," but provides no factual basis for this claim.  (Pl.'s 56.1 ¶ 168.)  Indeed, it is undisputed that of the 20 out of 300 applicants chosen to advance to the screening interview stage, eight were women.  (Defs.' 56.1 ¶¶ 165, 168.)  "This fact alone diminishes the Plaintiff['s] prospects for raising an inference of employment discrimination."  *Garnett-Bishop v. New York Cmty. Bancorp, Inc.*, No. 12-CV-2285, 2017 WL 836562, at *32 (E.D.N.Y. Mar. 2, 2017) (collecting cases).  Moreover, Cosgrove, one of the three members of the review committee, is female, further undermining

---

Church," (Resume), while the resume Plaintiff emailed to Cosgrove says "Bethel African Methodist Episcopal Church," (Email Application).  Even assuming Defendants read the emailed version, the fact that Plaintiff was an associate pastor at an African church does not guarantee she is African American, let alone indicate that Defendants considered this when deciding not to interview her.  To the extent Defendants did not read her emailed application, (*see* Job Posting (requiring online application only)), this fact also does not create an inference of discrimination.

Plaintiff's gender discrimination claim. *See Blasi v. New York City Bd. of Educ.*, No. 00-CV-5320, 2012 WL 3307227, at *21 (E.D.N.Y. Mar. 12, 2012) ("When the decisionmaker is of the same protected category as the plaintiff, discrimination is less plausible albeit not impossible."), *adopted by* 2012 WL 3307346 (E.D.N.Y. Aug. 12, 2012), *aff'd*, 544 F. App'x 10 (2d Cir. 2013). Conversely, the fact that at least Bergmann was male does not alone mean his decision was based on Plaintiff's gender.[26] *See Bucek*, 2018 WL 1609334, at *13 ("[T]his claim amounts to an assertion that because a male made the decision to hire another male over a female, it was discriminatory. That is not the law."). Finally, to the extent Plaintiff again relies on the list of principals and administrators in the district since 2012 to show discrimination in hiring, the Court already explained how this document does not indicate what positions these employees applied for, who made the decisions to hire them, whether their race was known to those that hired them, who they were competing against for their position, and what their prior experience was. (*See* Compliance Letter Ex. C.) *See Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 514 (S.D.N.Y. 2010) ("[V]ague claims of differential treatment alone do not suggest discrimination, unless those treated differently are similarly situated in all material respects." (internal quotation marks omitted)). Moreover, this list indicates that multiple women serve as administrators and principals in the District. (Compliance Letter Ex. C.) To the extent that Plaintiff is relying on these "statistics" to show a pattern of discrimination merely because she was told she would not be hired because she was not certified, this claim fails for the reasons explained earlier—namely, that it is not supported by *any* evidence in the record. (Pl.'s Mem. 7–8.)[27]

---

[26] Jean Miccio's gender is not clear from the record. (Defs.' 56.1 ¶ 135.)

[27] Plaintiff cites a case holding that requiring applicants to "fit" or "fit[] in" is evidence of pretext. *Abrams v. Dep't of Public Safety* 764 F.3d 244, 253 (2d Cir. 2014). However, she cites

Therefore, absent any evidence that Plaintiff's gender or race played any role in Defendants' decision not to hire her as the Assistant Principal, the Court will not substitute its own judgment for that of Defendants, who made a judgment that Ruolo was a better qualified candidate than any of the 299 other candidates, including Plaintiff. *See Byrnie,* 243 F.3d at 103 (noting that where the other candidate was not unqualified and the employer was not unreasonable in selecting that candidate "in light of a comparison of her paper credentials with [the plaintiff's]," the plaintiff failed to show pretext); *Newsome v. IDB Capital Corp.*, No. 13-CV-6576, 2016 WL 1254393, at *22 (S.D.N.Y. Mar. 28, 2016) ("At their heart, [the] [p]laintiffs' claims reflect their disagreement with the [d]efendants' business judgments . . . or reflect the [p]laintiffs' subjective feelings and perceptions that they were being discriminated against because of their . . . gender. Such claims are, however, insufficient to establish discrimination."). The Court therefore grants Defendants' Motion for Summary Judgment on the § 1983 claims.

### b. *Monell* Liability

The District also argues that Plaintiff's § 1983 claims should be dismissed against it for failure to provide evidence of a policy, custom or practice that caused the alleged constitutional violations. (Defs.' Mem. 9–12.) "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). Thus, "to prevail on a claim against a municipality under [§] 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the

---

no evidence indicating that such statements were made by anyone employed by the District or that "fitting in" was a requirement of the Assistant Principal job. (Pl.'s Mem. 9.)

constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008). In other words, a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (italics omitted).

A plaintiff may satisfy the "policy or custom" requirement by showing one of the following:

> (1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.

*Brandon v. City of N.Y.*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010) (citations omitted); *Patterson v. County of Oneida*, 375 F.3d 206, 226–27 (2d Cir. 2004) (same). Moreover, a plaintiff also must establish a causal link between the municipality's policy, custom, or practice and the alleged constitutional injury. *See City of Okla. v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) ("The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the 'moving force' behind a *constitutional* violation. There must at least be an affirmative link between[, for example,] the training inadequacies alleged, and the particular constitutional violation at issue.").

As an initial matter, without an underlying constitutional violation, the District cannot be liable under *Monell*. *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006).[28] Even

---

[28] To the extent Plaintiff now argues that the interactions she had with District employees in 2004 and 2014 were independent constitutional violations, these claims fail, because Plaintiff introduced no evidence that she applied for the job in 2004, and it is undisputed that Davis, a non-party, was not involved in the 2014 hiring process. (Davis Dep. 30.) *See Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 469–70 (S.D.N.Y. 2008) (requiring that a

assuming a constitutional violation, Plaintiff fails to provide any evidence creating a dispute of fact as to a policy, custom, practice, or action by a final policymaker. Construing her submissions liberally, Plaintiff alleges that the District had a discriminatory policy of refusing to acknowledge her certification, and therefore refusing to hire her, when she sought employment. (Compliance Letter 2; Pl.'s Mem. 7–8.) Plaintiff does not cite any facts showing a policy of discrimination in the District's hiring process or its certification search process. Instead, she attempts to impose vicarious liability on the District for purported violations of its nondiscrimination policy, (Defs.' 56.1 ¶¶ 131–33), "in direct violation of *Monell*," *Tyrrell v. Seaford Union Free Sch. Dist.*, 792 F. Supp. 2d 601, 632 (E.D.N.Y. 2011) (dismissing *Monell* claim where the "plaintiff's argument [wa]s not that [the] defendants acted pursuant to an official discriminatory policy. . . . Rather, [the] [p]laintiff's argument [wa]s . . . that [a defendant] failed to act in accordance with [the] policy"). Further, even assuming that Plaintiff's interactions with the HR employees were discriminatory, these two "isolated incidents," ten years apart, "are insufficient as a matter of law to show a [District] custom under . . . *Monell*." *Tuminello v. Doe*, No. 10-CV-1950, 2013 WL 1845532, at *4 (E.D.N.Y. Apr. 30, 2013) (collecting cases).

Furthermore, the only actors who allegedly violated Plaintiff's constitutional lights are the two HR employees and the members of the review board, including Cosgrove. However, none of these individuals is a final policymaker whose actions give rise to *Monell* liability. (Defs.' 56.1 ¶¶ 136–47 (stating that the review board only determines who to invite for interviews and who will proceed to the committee interview stage, after which the Superintendent interviews finalists and make a recommendation to the Board of Education,

---

plaintiff actually apply for a position and not receive an offer of employment to establish a prima facie failure to hire case).

46

which may adopt the recommendation).)  *See Gerardi v. Huntington Union Free Sch. Dist.*, 124

F. Supp. 3d 206, 228–29 (E.D.N.Y. 2015) (explaining that employees who screened and

interviewed individuals before recommending candidates to the superintendent and the board

"were not 'final policymakers' with regard to the District's decision not to hire the [p]laintiff"

and there was no evidence in the record that the school board delegated its policymaking powers

to those individuals); *T.E. v. Pine Bush Cent. Sch. Dist.*, 58 F. Supp. 3d 332, 372–73 (S.D.N.Y.

2014) (explaining that under New York law, the Board of Education is responsible for creating

rules and policies); N.Y. Educ. Law § 1709(16) (providing that the Board of Education has

authority over a school district's hiring policies).  Put differently, these District employees could

not have established the purported municipal policies that violated Plaintiff's constitutional

rights, and their failure to provide adequate training or supervision to subordinates cannot

amount to deliberate indifference to Plaintiff's rights.  *See Brandon*, 705 F. Supp. 2d at 276–77.

Indeed, even assuming that Plaintiff is broadly alleging that the District itself is liable for

providing deficient training to its employees in searching for certifications, Plaintiff's allegations

are purely conclusory, (Pl.'s Mem. 8; Pl.'s 56.1 ¶¶ 38–39), identifying no evidence creating a

dispute regarding deliberate indifference or a specific deficiency in the District's training

program.  *See Wray v. City of New York*, 490 F.3d 189, 196 (2d Cir. 2007) (requiring the plaintiff

to identify a "specific deficiency" in the municipality's training program); *Walker v. City of New

York*, 974 F.2d 293, 297–98 (2d Cir. 1992) (listing requirements for deliberate indifference from

training under *Monell*); *see also Sutton v. City of Yonkers*, No. 13-CV-801, 2015 WL 390189, at

*5 (S.D.N.Y. Jan. 26, 2015) ("A plaintiff's conclusory allegations of municipal liability will not

defeat a motion for summary judgment on a *Monell* claim." (alteration and internal quotation

marks omitted)), *adopted by* 2015 WL 876459 (S.D.N.Y. Mar. 2, 2015).  Therefore, the Court

grants the District's Motion for Summary Judgment on Plaintiff's § 1983 claims.

### 3.  NYSHRL Claim

Because Plaintiff's race and gender discrimination claim under the NYSHRL is analyzed

under the same framework as her § 1983 claim, it fails for the same reasons identified above.

*See Kassel*, 272 F. Supp. 3d at 535 (holding that NYSHRL claims are analyzed under *McDonnell*

*Douglas*); *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 586–87 (S.D.N.Y. 2011)

(dismissing the plaintiff's NYSHRL race and gender discrimination claims "for the same reasons

that her . . . discrimination claim[s] under . . . [§] 1983 . . . [were] dismissed"); *cf. Geras v.*

*Hempstead Union Free Sch. Dist.*, 149 F. Supp. 3d 300, 339 (E.D.N.Y. 2015) (holding that if

NSYHRL claim survives summary judgment, so too must the parallel § 1983 claim).  The Court

therefore grants Defendants' Motion for Summary Judgment on this claim.[29]

---

[29] The Court need not address Defendants' alternative argument that Plaintiff failed to satisfy the notice of claim requirement under New York Education Law § 3813(1).  (Defs.' Mem. 12–13.)  *See Marino v. Chester Union Free Sch. Dist.*, 859 F. Supp. 2d 566, 570 (S.D.N.Y. 2012) ("Section 3813(1) of [the] New York State Education Law provides that no action may be maintained against a school district unless notice of claim was served within three months of the date on which the claim accrued.").  However, the Court notes that Plaintiff's claim accrued at the latest on July 2, 2014, when Plaintiff received a letter from the District which she interpreted to say her application for the Assistant Principal position had been denied. (July 2, 2014 Letter; Pl.'s 56.1 ¶ 136.)  *See Nash v. Bd. of Educ. of the City of New York*, No. 99-CV-9611, 2018 WL 2316337, at *4 (S.D.N.Y. May 8, 2018) ("NYSHRL['s] . . . one-year statute of limitations is triggered on the date that an adverse employment determination is made and communicated to the plaintiff." (internal quotation marks omitted)); *see also Petty v. City of New York*, 633 F. App'x 52, 53 (2d Cir. 2016) (holding that the plaintiff's NYSHRL claim accrued when he received the final letter "informing him his employment application was rejected").  Therefore, even assuming the communications Plaintiff proffers could satisfy the notice of claim requirement, (*see* Pl.'s Mem. 1–2), none was filed within the three-month deadline—that is, by October 2, 2014.  § 3813(1).  This alone could permit the Court to dismiss Plaintiff's NYSHRL claim.  *See Nelson v. Mount Vernon City Sch. Dist.*, No. 15-CV-8276, 2017 WL 1102668, at *3 (S.D.N.Y. Mar. 23, 2017) (noting that "failure to comply is a fatal effect mandating dismissal of the action" (internal quotation marks omitted)).

## III. Conclusion[30]

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted. The

Clerk of Court is respectfully directed to terminate the pending Motion, (Dkt. No. 83), enter

judgment for Defendants, close this case, and mail a copy of this Opinion to Plaintiff.

SO ORDERED.

DATED:     July 5, 2018
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

[30] Plaintiff asserts that Cosgrove has been hacking into her computer and tampering with her files. (Compliance Letter 4.) This claim is not in the operative Complaint, (Third Am. Compl.), and in any event, Plaintiff does not have standing to bring criminal charges, *see Salvador v. State of New York*, No. 12-CV-7299, 2013 WL 12080930, at *1 (S.D.N.Y. Feb. 19, 2013) ("The Supreme Court has held that a private party does not have standing to file or prosecute a criminal case because 'a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.'" (quoting *Leeke v. Timmerman*, 454 U.S. 83, 86 (1981) (per curiam))), *aff'd*, 550 F. App'x 56 (2d Cir. 2014). Moreover, Plaintiff cites *no* admissible evidence to substantiate these allegations. (Compliance Letter Ex. K (listing emails in different folders on a typed word document with no authentication or explanation of context).)

49